UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br>    *Plaintiff*,<br><br>            v.<br><br>LEON VACCARELLI et al.,<br>    *Defendants*. | Case No. 3:17-cv-1471 (CSH)<br>June 29, 2023 |

### ORDER GRANTING CONSENT MOTION FOR SUMMARY JUDGMENT

**HAIGHT, Senior District Judge:**

On August 31, 2017, the U.S. Securities and Exchange Commission ("Commission") brought this action against Leon Vaccarelli, individually and doing business as Lux Financial Services, and his limited liability company LWLVACC (collectively, "Defendants"). The SEC alleges that Vaccarelli ran a Ponzi scheme in which approximately $1.4 million in client funds were used for personal expenses and payments to prior investors, and that he stole more than $200,000 from a living trust while serving as its trustee. Compl. [Doc. 1] ¶¶ 5–50; Pl.'s Loc. R. 56(a)(1) Statement [Doc. 62-2] ("56(a)") ¶ 11.

On May 2, 2018, the U.S. Attorney's Office for the District of Connecticut indicted Vaccarelli for the same underlying conduct. 56(a) ¶ 2. Following an eleven-day jury trial, Vaccarelli was convicted on May 29, 2019 on all counts, sentenced to 90 months of incarceration, and ordered to pay restitution of $1,456,632.77. *Id.* ¶¶ 4–6. His conviction and sentence were affirmed by the United States Court of Appeals for the Second Circuit on October 21, 2021. *Id.* ¶ 6.[1]

---

[1] See *United States v. Vaccarelli*, No. 3:18-CR-92 (JBA), 2020 WL 1329695, at *1 (D. Conn. Mar. 23, 2020) (denying Vaccarelli's motion for acquittal); *United States v. Vaccarelli*, No. 20-3768-CR, 2021 WL 4805218, at *1 (2d Cir. Oct. 15, 2021) (affirming that denial)

On February 9, 2023, the Commission filed for summary judgment in this case, arguing that Defendants are collaterally estopped from relitigating issues of fact previously and necessarily decided in the criminal case. *See* Mot. for Summ. J. [Doc. 62-1] at 4–6. On May 31, 2023, Defendants, through counsel, filed their consent to the motion for summary judgment, in which they "agree that they are precluded from relitigating the same facts that underlie the criminal case under collateral estoppel and agree that there is no genuine material issue of fact remaining as to the Commission's claims against Mr. Vaccarelli or his LLC" and "consent to summary judgment being entered against them in this case." Consent to Pl.'s Mot. for Summ. J. [Doc. 73] at 2. Defendants consented to the permanent injunction, disgorgement, and civil penalties sought in the Commission's Complaint, but noted their view that any monetary orders or civil penalties beyond the restitution in the criminal case would be duplicative and "would only detract from the defendant's ability to focus any assets or future assets on restitution to victims." *Id.*

On June 7, 2023, the Commission moved for entry of a proposed final judgment imposing:

    a) An injunction permanently restraining and enjoining Defendants from violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78j(b)] and Rules 10b-5 and 21F-17(a) [17 C.F.R. §§240.10b-5; 240.21F-17(a)], and Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §77q(a)];

    and

    b) As to Vaccarrelli only, disgorgement of $1,419,331 plus pre-judgment interest of $99,610 thereon, for a total of $1,518,941, with this amount offset by $1,456,632, the amount of the Order of Restitution entered in the related case, *United States v. Vaccarelli, et al.*, 3:18 CR 92 (District of Connecticut). [Yielding a total obligation of $62,309.]

Pl.'s Mot. for Entry of Final J. [Doc. 74] at 1; *see also* Proposed Final J. as to Defs. [Doc. 74-1].

In support of the proposed disgorgement, the Commission filed an affidavit by Patrick J. Noone, a Supervisory Accountant at the Commission's Boston Regional office, stating that based on his review of bank records and filings in the criminal case, he concludes that Vaccarelli misappropriated a total of $1,637,781 from investors, of which he repaid approximately $218,450, leaving an unpaid balance of approximately $1,419,331 plus prejudgment interest of $99,610. *See* Second Decl. of Patrick J. Noone [Doc. 74-2] ¶ 1, 10–11. On June 26, 2023, Defendants filed a Consent to Plaintiff's Motion for Final judgment [Doc. 75], stating, "Inasmuch as the plaintiff is not seeking civil fines or penalties[, Defendants] consent to the entry of final judgment in docket entry#74 and to the proposed order at docket entry #74-1.

Although Defendants consent to the judgment proposed by the Commission, a brief discussion of the Commission's statement of undisputed material facts, which this Court adopts in its entirety, is warranted.

**UNDISPUTED FACTS**

From February 2011 to July 19, 2017, Vaccarelli was a registered representative of a brokerage company and an investment adviser associated with the Waterbury, Connecticut branch of an advisory services corporation. 56(a) ¶ 9. Vaccarelli was also the sole owner and only member of LWLVACC, with complete control over its activities. *Id.* ¶ 10. From September 2012 through early 2017, Vaccarelli—both personally and through LWLVACC—persuaded at least nine of his brokerage customers and other individuals to invest more than $1.4 million in what Vaccarelli represented were personal loans and investments. *Id.* ¶ 11. He used this money to pay personal expenses or to make Ponzi-scheme-like payments to prior investors. *Id.* ¶ 12. Vaccarelli repeatedly assured clients that their money would be invested on their behalf and convinced them to fund the

3

purported loans and investments by liquidating their other investments, including pensions, 401(k) accounts, and annuities. *Id.* ¶ 12.

As part of this course of conduct, in September 2015, Vaccarelli persuaded Christine Chauncey to invest $47,000, withdrawn from her annuity, in what Vaccarelli described a private direct investment. *Id.* ¶ 24. Instead of investing it, Vaccarelli used Chauncey's money to pay his personal and business expenses. *Id.* ¶¶ 25–26. In June 2016, after Chauncey learned that she would incur a tax penalty for the withdrawal from her annuity, she contacted Vaccarelli to find out why. *Id.* ¶ 25. Vaccarelli informed her that an accounting firm would provide relevant tax documents by year's end, and asked her not to tell the brokerage company with which he was affiliated about the investments, because he was not supposed to have any outside investment business while affiliated with that company. *Id.* ¶¶ 25–26. Chauncey then retained an attorney, who negotiated the return of her $47,000, plus interest and penalties, from Vaccarelli.[2] *Id.* ¶ 27. As part of the agreement to return Chauncey's money, Vaccarelli required Chauncey to sign a release stating that she would not discuss the matter with "FINRA [the Financial Industry Regulatory Authority], The SEC [sic] or anyone else." *Id.*

Separately, in 2014, Vaccarelli became the trustee of a living trust holding approximately $480,000 in assets that had been established to support the beneficiary's health, maintenance, and support. *Id.* ¶ 38. The previous trustee had been a Connecticut bank. *Id.* On March 18, 2014, as part of the transfer of trustee responsibilities, the bank transferred approximately $280,000 in blue-chip equities into a brokerage account in the name of the trust, with Vaccarelli having sole trading and check-writing ability. *Id.* ¶ 39. On March 27, 2014, the bank also transferred $164,000 into Vaccarelli's personal account. *Id.* ¶ 38. Between March 2014 and September 2016, Vaccarelli

---

[2] Vaccarelli paid this amount using funds obtained from another client. *Id.* ¶ 29.

transferred more than $200,000 from the trust's brokerage account to his personal and business accounts, using it to make home mortgage payments and unrelated business payments, and leaving the trust's brokerage account with a balance of approximately $1,400. *Id.* ¶ 39.

This criminal scheme is identical with the factual basis for Vaccarelli's criminal conviction. *Id.* ¶ 8; *see also* Pl.'s Ex. A [Doc. 62-4], Ex. C [Doc. 62-6].

## **STANDARD FOR SUMMARY JUDGMENT**

The Commission's motion is made under Rule 56(a) of the Federal Rules of Civil Procedure, which provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

This standard "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphases in original). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

A district judge adjudicating a motion for summary judgment must perform "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that can properly be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," a circumstance that is not presented "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250.

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

## **DISCUSSION**

The Commission alleges that Defendants have violated (1) Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5]; (2) Section 17(a)(1) of the Securities Act [15 U.S.C. §77q(a)(1)]; (3) Section 17(a)(2) of the Securities Act [15 U.S.C. §§ 77q(a)(2)]; (4) Section 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(3)]; and (5) Rule 21F-17(a) of the Exchange Act [17 C.F.R.§ 240.21F-17(a)]. *See* Compl. ¶¶ 51–65.

The Commission argues, and Defendants agree, that the doctrine of collateral estoppel bars the relitigation of these issues. *See* Pl.'s Mem. of L. [Doc. 62-1] at 1–2; Consent to Pl.'s Mot. for Summ. J. at 2. The Second Circuit has held that collateral estoppel applies when

> (1) the issues of both proceedings are identical; (2) the relevant issues were actually litigated and actually decided in the prior proceedings; (3) there was a full and fair opportunity for the litigation of the issues in the prior proceeding, and (4) the issues were necessary to support a valid and final judgment on the merits.

*Roe v. City of Waterbury*, 542 F.3d 31, 41 (2d Cir. 2008). As this Court has noted in a similar case of enforcement by the Commission following a criminal conviction:

> The Second Circuit has "long held that a criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case." *United States v. U.S. Currency in Amount of $119,984.00, More or Less*, 304 F.3d 165, 172 (2d Cir. 2002) . . . ; *see also SEC v. Opulentica*, 479 F. Supp. 2d 319, 326 (S.D.N.Y. 2007) ("[defendant] was convicted by guilty plea on securities-fraud charges related to the same activities at issue here. Thus, all questions of fact

6

> material to and underlying [defendant's] criminal conviction, as established during the plea allocution, bind [defendant] in this subsequent civil action").)
>
> The rationale for this rule is that "[t]he Government bears a higher burden of proof in the criminal than in the civil context and consequently may rely on the collateral estoppel effect of a criminal conviction in a subsequent civil case. Because mutuality of estoppel is no longer an absolute requirement under federal law, a party other than the Government may assert collateral estoppel based on a criminal conviction." *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 43 (2d Cir. 1986). Although the SEC is not the same party as the United States, it has been permitted to rely on the estoppel effect of criminal convictions secured by the United States in seeking summary judgment in securities actions. *S.E.C. v. Tzolov*, No. 08-cv-7699 (SAS), 2011 WL 308274 (S.D.N.Y. Jan. 26, 2011).

*SEC v. Illarramendi*, 260 F. Supp. 3d 166, 176 (D. Conn. 2017), aff'd, 732 F. App'x 10 (2d Cir. 2018). These principles guide the Court's resolution of the consented-to motion for summary judgment.

**A. First Claim for Relief: Section 10(b) and Rule 10b-5**

In order to establish liability under Exchange Act Section 10(b) and Rule 10b-5, the Commission must show: "(1) a misrepresentation or omission, (2) that was material, (3) that was made . . . in connection with the purchase or sale of securities . . . , (4) scienter, and (5) the involvement of interstate commerce, the mails, or a national securities exchange." *SEC v. StratoComm Corp.*, 2 F. Supp. 3d 240, 253 (N.D.N.Y. 2014), *aff'd*, 652 Fed. App'x 35 (2d Cir. 2016). Here, Vaccarelli was convicted of securities fraud under the criminal provisions of Section 10(b) and Rule 10b-5 based on the same facts alleged in the Commission's Complaint. As the criminal and civil matters arise from the same set of facts, Defendants are therefore estopped from denying liability under Section 10(b) and Rule 10b-5.

**B. Second through Fourth Claims for Relief: Section 17(a)**

As the Commission notes, its Section 17(a) claim "has essentially the same elements as its Section 10(b) claim, except that Section 17(a) applies to the 'offer and sale' of securities rather

7

than to the 'purchase or sale' of securities, and Sections 17(a)(2) and 17(a)(3) require no showing of scienter." Pl.'s Mem. of L. at 7 (citing and paraphrasing *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 2008)). Given the close similarity between Sections 17(a)(1)–(3) and Section 10(b), this Court concludes, as many other district courts have, that collateral estoppel leaves no genuine issue of material fact remaining as to the alleged violations of Section 17(a). *See, e.g., SEC v. Mattera*, No. 11 Civ. 8323 (PKC), 2013 WL 6485949, at *9 (S.D.N.Y. Dec. 9, 2013).

### C. Fifth Claim for Relief: Rule 21F-17(a)

The Complaint's final claim concerns Rule 21F-17(a) of the Exchange Act. Rule 21F-17(a) provides: "No person may take any action to impede an individual from communicating directly with the Commission staff about a possible securities law violation, including enforcing, or threatening to enforce, a confidentiality agreement . . . with respect to such communications." Exchange Act Rule 21F-17(a) [15 C.F.R. 240.21F-17(a)]. Here, the Commission's statement of undisputed facts reveals, based on uncontested requests for admission, that Vaccarelli required one of his investors, Christine Chauncey, to sign a release in order to recover her money that specifically stated that she would not discuss the matter with "FINRA, The SEC [sic] or anyone else." *Id.* 56(a) ¶ 27. This violates the Rule 21F-17(a)'s prohibition on taking "action to impede an individual from communicating directly with the Commission staff about a possible securities law violation[.]" Exchange Act Rule 21F-17(a) [15 C.F.R. 240.21F-17(a)]. Accordingly, the record leaves no genuine dispute of material fact as to whether Defendants violated Rule 21F-17(a).

## **CONCLUSION**

For the reasons set forth above, the Court GRANTS the Commission's Motion for Summary Judgment against Leon Vaccarelli, individually and doing business as Lux Financial Services, and LWLVACC, LLC [Doc. 62], which is consented to by Defendants. The Court separately enters the final judgment consented to by the Parties.

It is SO ORDERED.

Dated at New Haven this 29th day of June 2023.

>  */s/ Charles S. Haight, Jr.*
>  CHARLES S. HAIGHT, JR.
>  Senior United States District Judge